[No. 10676.   Department Two.   August 22, 1913.]

H. H. Eaton, *Appellant*, v. King County, *Respondent*.[1]

Attorney and Client—Contract of Employment—Construction. There was not a "successful termination of proceedings," within the meaning of the contract whereby a county employed an attorney, for a fee contingent on such success, to recover escheated property for the benefit of the common school fund of the county, where, after he had done some work in certain cases, and prior to termination thereof, the legislature changed the law by enacting Rem. & Bal. Code, § 1356, vesting escheated estates in the state as part of the permanent common school fund of the state and giving the state board of tax commissioners control over the proceedings, with the advice and assistance of the attorney general and the several county attorneys; and thereunder proceedings were had, on motion of the attorney general, escheating the estates in question to the state of Washington.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 20, 1912, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Sullivan & Stevens*, for appellant.

*John F. Murphy* and *Samuel Morrison*, for respondent.

[1]Reported in 134 Pac. 682.

FULLERTON, J.—On October 29, 1903, the board of county commissioners of King county entered into the following contract with the appellant:

"This agreement made and entered into this 29th day of October, 1903, between King county, in the state of Washington, by and through its board of county commissioners, party of the first part, and H. H. Eaton, party of the second part;

"Witnesseth: That the party of the first part does hereby employ the party of the second part as special attorney and counsel to advise and assist the prosecuting attorney of said King county in the institution and prosecution to final determination in the superior court of the state of Washington, or in the circuit court of the United States for the district of Washington, and in any appellate court or courts to which the same may be in any manner removed, such proceedings in the name of the state of Washington as the said party of the second part may deem appropriate for the recovery of real property situated in the said county and of any interest therein of which any person may have died seized but not having devised the same and leaving no husband and wife or kindred, and for the recovery of personal property and of any right or interest therein the owner of which may have died being a resident of said county at the time of his death, not having disposed of the same by will and leaving no husband, widow or kindred, and to secure for such purpose such evidence as may be necessary for the institution and prosecution of such proceeding, and such party of the second part does hereby agree to advance all such sums of money as may be necessary to that end, and in the event any such proceeding may be instituted or prosecuted unsuccessfully, all expenses shall be paid by the party of the second part, and he shall receive no compensation for services in such unsuccessful proceeding, nor shall he be reimbursed for any money by him expended as aforesaid.

"Said party of the first part agrees, in consideration of such services as may be rendered by said party of the second part under the terms of this agreement, to pay him in cash immediately upon the successful determination of any such proceedings one-half of the actual cash value of any real or personal property that may be recovered in such proceedings, which said cash value shall be determined by three parties, one

to be selected by the said county commissioners, one by said Eaton, and the third by the two already selected, and they shall then reimburse the said party of the second part for one-third of the amount he may have advanced for the prosecution of the same. It is expressly understood that this agreement shall not include any lands or personal property which may now be established claimed by King county as escheated property and concerning which proceedings may subsequently be brought."

At the time the contract was entered into, it was thought by the board of county commissioners that escheated property inured to the benefit of the common schools of the county in which the property was situated, if real property, and to the common schools of the county in which the decedent resided at the time of his death, if personal property, and in fact they were so advised by the duly constituted legal adviser provided for them by the statutes. In 1907, however, the legislature made a radical change in the statutes governing escheated property. By the act of March 12 of that year (Laws 1907, p. 253; Rem. & Bal. Code, § 1356; P. C. 175 § 1), all such property was vested in the state as a part of the permanent common school fund of the state, and supervision over the proceedings looking to the escheat thereof was vested in the state board of tax commissioners; the statute making it the duty of the attorney general and "the several county attorneys of the state" to advise and assist such board in any and all matters and proceedings had under the provisions of the act.

Prior to the passage of the act mentioned, the appellant, acting pursuant to the contract, caused the records of King county to be searched for probate causes in which no heirs or devisees had appeared as claimants for the property left by the decedents; and among others, he found the estates of John B. Doherty, who left property of the value of $356.30; W. C. Tarbel, who left property of the value of $122.46; and John Moore, who left property of the value of $905.88. Search was immediately instituted to ascertain whether there were

any persons entitled to claim the property as heirs of the decedents, and an effort was made to have the several administrators close up the estates in order that the property thereof might be distributed. Nothing definite seems to have been done in this respect, however, and no judgment or order escheating the property was taken prior to the time the act of 1907 took effect.

On March 2, 1908, the property of these estates, on motion of the attorney general of the state of Washington, was escheated to the state of Washington for the benefit of the state's common school fund. What part the appellant had in these proceedings is not made clear by the record, but he appears to have had some part therein, possibly furnishing the attorney general with the information upon which he acted. On May 25, 1909, the appellant presented a claim to the board of county commissioners of King county for a sum equal to one-half of the value of the escheated property, and on the rejection of the claim by the commissioners, brought the present action to recover the amount claimed to be due. He was unsuccessful in the court below, and appeals from the adverse judgment.

It is contended by the appellant that he had performed all of the necessary labor and services, and incurred the necessary costs, to procure an escheat of the property of the estates in question prior to the passage of the act changing the law with reference to escheated estates, leaving nothing to be done but to enter the order of escheat, and hence had earned the compensation agreed upon in the contract for his services, and is now entitled to recover therefor. But it has seemed to us that the terms of the contract forbid this conclusion. It will be observed that the contract provides for payment only upon the "successful determination of any such proceeding" as may be instituted to procure an escheat of an estate, and here there was clearly no successful determination of these proceedings, within the purpose and meaning of the contract. The inducement which led the county to enter into the con-

tract was the procuring of the property of the estates for the benefit of the common school fund of their county—indeed, upon no other condition could the contract be valid—and the county was deprived of this benefit by the change in the law taking place prior to the order of escheat, which order alone could subject the property to the use of the county's school fund. It may be true that the act which prevented the carrying out of the contract was not the fault of the appellant, but it is also true that it was not the fault of the board of county commissioners, and since no blame attaches to either party because thereof, each must bear the loss severally sustained by him because of such act.

The rule of the case of *Reed v. Gormley*, 47 Wash. 355, 91 Pac. 1093, does not aid the appellant. The services there performed for which recovery was allowed were completely performed by the appellant prior to the change in the law, while here the services were incomplete at a time when the superior power intervened and prevented the final act necessary to a completion of the services for which compensation could be claimed.

There is no error in the judgment of the court below, and it will stand affirmed.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.